## FARRAND OPTICAL CO., Inc. v. UNITED STATES.

United States District Court
S. D. New York.

May 2, 1952.

Dorsey, Burke & Keber, New York City, Peter Keber, New York City, of counsel, for plaintiff.

Myles J. Lane, U. S. Atty., New York City, Samuel S. Burman, Asst. U. S. Atty., New York City, of counsel, for defendant.

GODDARD, District Judge.

Motion for summary judgment by plaintiff and cross motion by defendant.

Plaintiff entered into three cost-plus-fixed-fee contracts, (I) NObs 21258, dated

June 30, 1945; (2) N5ori 82, dated January 12, 1945; and (3) NOrd 7315, dated October 20, 1944, for the production of certain equipment for the Navy. All three contracts by reference to the "Explanation of Principles for Determination of Costs under Government Contracts, War Department-Navy Department", [printed by the United States Government Printing Office, April, 1942] include as allowable costs plaintiff's payments to unemployment funds incurred by it in the performance of the contracts and accepted by the Bureau of Supplies and Accounts as chargeable thereto in accordance with the provisions of said "Explanation of Principles."

The "Explanation of Principles" includes in its outline of the items of cost properly chargeable to a cost-type contract:

"Other indirect shop costs
"29. * * *

"(e) Employer's payments to unemployment, old age, and social security funds, not elsewhere included. * * *"

During its performance of the contracts, the plaintiff was required to make certain contributions under the New York State Unemployment Insurance Law on account of wages paid during the periods July 1, 1945–June 30, 1946, and July 1, 1946–June 30, 1947.

On September 21, 1945, under the tax credit plan of the New York State Unemployment Insurance Law, Labor Law, McK. Consol.Laws, c. 31, § 577, plaintiff received a tax credit in the amount of $21,245.89 which was used in the payment of unemployment taxes for the period July 1, 1945–June 30, 1946, and the balance due for that period was paid in cash. On September 9, 1946, the plaintiff received a further tax credit in the amount of $25,291.17 which was used in the payment of unemployment taxes for the period July 1, 1946–June 30, 1947. This credit being in excess of the tax liability for the period, no further cash payment was necessary.

Of these credits used to offset the tax liability, $9,946.06, the amount in suit, is conceded to be allocable to the three contracts. The Navy Cost Inspector disallowed this amount as a cost on the ground

that the credits were not refunds of prior tax contributions but were reductions of the current taxes. This was approved by the Supervisory Cost Inspector, Eastern Area, and on appeal to the Bureau of Supplies and Accounts [Cost Inspection Service] the disallowance was sustained on June 27, 1949. The Armed Services Board of Contract Appeals denied the plaintiff's appeal on November 30, 1950.

Plaintiff then filed this suit for breach of contract under 28 U.S.C.A. § 1346(a) (2).

Under the New York State Unemployment Insurance Law an employer was required to pay regular contributions in an amount equal to 2.7% of his payroll, § 570, subd. 1. The tax credits employed by plaintiff became available under § 577 of the Unemployment Insurance Law, there being a "surplus" in the fund.

Section 577 provided that "qualified employers" were to be allowed a "credit" against "contributions" for the ensuing year whenever a "surplus" should exist in the fund on June 30th of a particular year. A "qualified employer" is "any employer who in each of the thirteen consecutive calendar quarters immediately preceding the computation date was required to file and filed all contribution reports * * *, and has paid contributions due thereon on or before the effective date."

The amount of such employer's participation in the credit was determined by a complex formula set forth in Section 577, based on the employer's payroll of the calendar year preceding the computation date, and certain experience factors based on its payroll for the three years prior to the establishment of the surplus, the decreases in the payroll within any of these calendar years, and the number of consecutive calendar years preceding the computation date for which the employer was liable for contributions.

Section 577 further provided:

"4. Notice, application and transfer of credits. (a) Each qualified employer shall, as soon as practicable after the effective date, be furnished a notice showing the amount of credit to which

he is entitled. The amount shown on the notice may be applied against contributions which are payable on wages paid in the four consecutive calendar quarters beginning after the effective date, and reported not later than thirty days after the date prescribed by the commissioner for payment of contributions on wages paid in the last of such quarters."

The statute provided only one method for the use of the credit. It had to be applied to offset the contribution due during the four calendar quarters following the effective date; otherwise the credit abated. Matter of Levy, 276 App.Div. 643, 97 N.Y. S.2d 275.

Plaintiff and the defendant have made cross-motions for summary judgment, both parties asserting that there is no issue of fact. In itself, this does not preclude the court from finding otherwise. Steinberg v. Adams, D.C., 90 F.Supp. 604; Walling v. Richmond Screw Anchor Co., 2 Cir., 154 F.2d 780; Begnaud v. White, 6 Cir., 170 F.2d 323.

The complaint alleges breach of the contracts. The answer is a denial of the allegations. Both parties have based their arguments principally on the interpretation of Section 577 of the New York Unemployment Insurance Law. In substance, the plaintiff asserts that the credit was merely a refund of prior years' payments, on the theory that having created a surplus in the fund, employers have now received a refund for their share of the overpayments for the years involved. They thus argue that the application of the credit to the current tax liability did not reduce the cost for they were liable for the full statutory rate. Defendant maintains that the credit when offset against the current liability to the fund was actually a reduction of the tax liability for the year to which it was applied.

In Harvey v. State, 200 Misc. 233, 102 N.Y.S.2d 157, 161, the New York Court of Claims, on January 17, 1951, said that—

"The theory of the legislation [§ 577] and its history do not support the contention that the credits are a readjust-

ment of the contribution rate for a particular year made retroactively."

Involved in that case was a cost plus a percentage of cost contract with the State of New York. The contract provided that cost should include " ' * * * contributions or taxes required by law based on the salaries or wages of all persons * * * '." As to the unemployment insurance credits, the court said—

"If utilized by the claimants in the calendar year succeeding that date and applied to reduce the contribution the claimants made for persons employed by them on the State's job a fair interpretation of the contract would mean that the cost thereof was reduced accordingly and upon such proof and such interpretation the State should have the benefit of the consequent lowered cost."

The New York court therein rejected the interpretation of the New York statute that plaintiff desires this court to make here. The written contract there was substantially the same as the one here involved. The plaintiff's motion for summary judgment is denied.

It does not follow, however, that the defendant must of necessity prevail on its motion. If there is the slightest doubt as to the facts, a summary judgment ought not to be granted. Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130; Arnstein v. Porter, 2 Cir., 154 F.2d 464.

The plaintiff has raised the issue of the parties' intent.

The plaintiff urges that the intention of both parties at the time the contracts were entered into, was that no reduction of costs was to be made by the Navy for credits of such a nature; that at the time of the negotiation of the contracts, the Navy took a position that accorded with the plaintiff's contention; that this is clearly demonstrated by the position taken by the Navy Department as late as February 18, 1947 after the contracts were negotiated and while they were being performed; [See Ex. XII attached to plaintiff's moving papers]; that had this not been the in-

tention of the Navy, the contracts should have so provided, and that as the contracts were drawn by the Navy, any doubt as to their meaning should be strictly construed against the Navy.

The decision of the Armed Services Board of Contract Appeals of November 30, 1950 [page 10] stated—

"* * * that considerable confusion existed in the early efforts of the various Government agencies to secure to the Government its proper share in the tax 'credits' which became available under Section 577 of the New York law, that during those early efforts there was an absence of any consistent treatment of contractors among the different agencies of the Government. * * *"

and also said—

"Obviously, neither the subject contracts nor the incorporation therein by reference of the Explanation of Principles offer any indication that the parties at the time of contracting had addressed their attention to the immediate question presented by the appeal." [Ex. VIII, p. 7, par. 15, attached to plaintiff's moving papers].

In construing a contract, the circumstances in which the words are used is always relevant and usually indispensable. New York Trust Company v. Island Oil & Transport Corp., 2 Cir., 34 F.2d 655.

The question now calls for a construction of the contracts which are ambiguous, and where a contract is ambiguous and parol evidence is relevant and material to the issue of construction, a question of fact is presented. Rolle Mfg. Co. v. Marco Chemicals Inc., D.C., 92 F.Supp. 218. A trial then should be had where the parties may offer relevant evidence on the issue.

It is the aim of the courts in interpreting a written contract, to give effect to the mutual intention of the parties as it existed at the time of the execution of the contract. Pacific Portland Cement Co. v. Food Machinery & Chemical Corp., 9 Cir., 178 F.2d 541. It cannot be determined from the facts before the court whether the parties ever considered the question now presented. If they did agree in their understanding, it would be premature to grant summary judgment, for their intention has a definite bearing on the question.

The motions for summary judgment are denied.

Settle orders on notice.