Louis GINBERG, Appellant,

v.

Laszlo N. TAUBER, Appellee.

No. 93–CV–1099.

District of Columbia Court of Appeals.

Argued Jan. 5, 1995.

Decided April 25, 1996.

Jacob A. Stein, Washington, DC, with whom Barry Coburn was on the brief, for appellant.

William Daniel Sullivan, Washington, DC, with whom Michael R. Goodstein and Neal Goldfarb were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and KING, Associate Judges.

KING, Associate Judge:

This action arises out of a dispute over attorneys' fees between Louis Ginberg, an attorney, and his former client, Laszlo N. Tauber. Ginberg filed an action against Tauber seeking, on a *quantum meruit* theory, the reasonable value of the services he provided in representing Tauber in a commercial landlord and tenant dispute against the District of Columbia. Although there was no fee agreement between the parties, Ginberg maintained he was entitled to recover the sum of $3,750,000 in attorneys' fees. The claimed fee amounted to one-third of the judgment, plus accruals, recovered from the District. Disclaiming the existence of a contingency fee arrangement or any other formal contract, Ginberg argued that, based on the parties' prior course of dealing, and an oral agreement allegedly entered into at the end of the representation, there was an "understanding" between himself and his client that his fee would be result-based. Ginberg moved for summary judgment on the issue of liability, which the court granted, and demanded a jury trial on the issue of the amount of the fee. The trial court, in a December 10, 1991 order, *sua sponte*, struck Ginberg's demand for a jury trial, stating:

> unless a motion for reconsideration supported by authority to the contrary is filed

by ... [Ginberg] no later than January 10, 1992, ... [Ginberg's] demand for a jury trial shall be struck from the record on the authority of *Kudon v. f.m.e. Corp.*, 547 A.2d 976, 980 (D.C.1988). In *Kudon*, the Court of Appeals held that "where a claim for attorneys' fees arises from a private contract provision, such a claim does not embody a right to a trial by jury under the Seventh Amendment." *Id.*

Ginberg filed no motion for reconsideration, but on January 13, 1992, he petitioned this court for a writ of mandamus seeking an order to the trial judge to reinstate the jury demand. We summarily dismissed the petition on March 26, 1992. On June 8, 1993, after the case was routinely reassigned to another trial judge, Ginberg's counsel moved for reconsideration of the pretrial ruling regarding his demand for a jury trial. The new judge, concluding that this court's summary denial of Ginberg's petition for a writ of mandamus should be regarded as the law of the case, denied the motion for reconsideration.

The trial court then conducted an evidentiary hearing to determine the amount of the fee, at which both parties presented fact and expert witnesses. The trial court, using the lodestar[1] method, awarded Ginberg fees in the amount of $389,788.75, computed at a rate of $325 per hour. In this appeal from that judgment, Ginberg contends that: (1) he was entitled to a jury trial to determine the amount of the fee owed him; and (2) the trial court erred in selecting the lodestar method to determine a reasonable fee for his service.[2] We affirm.

## I. Facts

Tauber owned the Presidential Building in downtown Washington D.C., which he leased to the District of Columbia (the "District") government. In October 1978, the District notified Tauber that it intended to terminate the lease and vacate the building on December 31, 1981. On December 3, 1979, however, the District attempted to rescind its termination notice. Ginberg began his representation of Tauber shortly thereafter, advising Tauber that the District was not entitled to withdraw the notice of intent to terminate the tenancy. On January 2, 1982, more than two years after the District's notice of intent to rescind the termination notice, Ginberg filed two actions on Tauber's behalf, one for possession of the Presidential Building, and one for a declaratory judgment that the District was obligated to pay a market rental, rather than the rent provided for in the lease, for as long as the District remained in possession of the property. During that two year period, Ginberg prepared the law suits, however, he never communicated with Tauber concerning the basis for the fee he intended to charge for the representation.

Tauber testified that he "very much" wanted to settle the case with the District, and he made several attempts to persuade Ginberg to seek a settlement. According to Tauber, however, Ginberg declined to initiate settlement discussions. In early 1983, the case went to trial and the District prevailed. Ginberg agreed to handle the appeal, and on April 26, 1984, wrote to Tauber about his fees for handling the appeal:

> In my discussion with you in January 1984, I informed you that in connection with the handling of the appeal I want a $5,000 payment on a fee at this time, and a like amount on account of a fee in January 1985. Actually, any further fee arrangement or discussion should await the outcome of the appeal, or to see what may eventuate. I believe this would be the only fair way to have a fee determination.

Ginberg testified that he intended the "further fee arrangement" language to take care

1. See *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974); *Blanchard v. Bergeron*, 489 U.S. 87, 91–93, 109 S.Ct. 939, 943–44, 103 L.Ed.2d 67 (1989) (examining the application of *Johnson*); and discussion in Part III, *infra*.

2. Tauber contends that because Ginberg did not seek reconsideration of the trial court's order denying the jury trial request, he waived his right to challenge the rejection of his jury trial demand. Tauber also contends that our denial of Ginberg's petition for writ of mandamus conclusively resolved the issue of Ginberg's entitlement to a jury trial against him. In light of our resolution of the jury trial issue, we do not consider either contention.

of fees other than the appeal, but that he never communicated that understanding to Tauber. Ginberg received the requested $10,000, wrote the brief, argued the appeal, and prevailed in part, in that this court remanded the case to the trial court for a new trial. Ginberg represented Tauber in the trial following remand, and a subsequent appeal by the District and cross-appeal by Tauber, from a $6.6 million verdict in Tauber's favor. By early 1991, the judgment and post-judgment accruals of rent, damages, and interest totaled $11,250,000. During this time, Ginberg refused to initiate settlement discussions with the District, despite Tauber's urging, and threatened to withdraw from representing Tauber if Tauber tried to initiate a settlement himself or through anyone else. Nonetheless, Tauber settled the case for $9 million in amortized payments over the balance of the lease, with eight and three-quarters percent interest per annum.

Ginberg also testified that the parties' first fee discussion for the entire representation occurred outside the Corporation Counsel office following the settlement conference. According to Ginberg, he informed Tauber that he believed he was entitled to a fee of thirty percent of the settlement amount, to which Tauber responded "fine." Tauber remembered the conversation differently. He testified:

> [Ginberg] said to me that he discussed with certain colleagues of his and they suggested a 40 percent of the savings on the award, and I was in shock. I looked at him and just couldn't answer to him. And he repeat it again that I am asking only one-third. And he—I was still in shock, because nothing in the world that I expected this one. And I told him don't explain to me the contingency fee, I am a practicing physician and I know what malpractice cases is and the lawyers are charging one-third of the claim. But this wasn't a malpractice case, but Mr. Ginberg, I am not discussing fees in the lobby. [sic]

Following that conversation, Ginberg sent Tauber a bill for $3,750,000, exactly one-third of the amount of the judgment plus accruals. The requested fee was approximately forty percent of the settlement amount. This trig-gered a contentious correspondence between the parties, leading to the present action.

In the ten years that Ginberg represented Tauber in the District/Tauber rental dispute, Ginberg kept no record of the time he expended on Tauber's behalf, and did not communicate with Tauber about his fees, except the $10,000 for the appeal. Ginberg testified that he was unaware of his professional responsibility to make the terms of his fee clear to the client at the beginning of the representation. He further testified that his fee was based on the benefits to, or the amount Tauber realized from the litigation, the problems he encountered during the trial, and the ten-year duration of the representation.

Ginberg testified that he was entitled to charge Tauber a fee regardless of the outcome of the litigation, and represented that the post-settlement fee conversation between himself and Tauber was not an agreed basis for his recovery. Specifically, Ginberg made clear in the trial court that he was not contending that Tauber had agreed to pay a percentage of recovery as Ginberg's fee during that conversation. Ginberg maintains, instead, that he was entitled to a *quantum meruit* recovery for the "reasonable value" of his services, and the result-based bill submitted in support of this claim is consistent with the method used in his prior representations of Tauber from 1971 through 1979.

With respect to those prior representations, the evidence showed that Ginberg billed Tauber in five other real estate transactions involving the purchase of "multi-million dollar" real properties for which Ginberg billed between $1,000 to $23,000 in fees. Ginberg testified that during these transactions, he never disclosed to Tauber the basis of the fees he billed, and Tauber paid because Tauber trusted him to send an accurate bill. Ginberg represented Tauber in two other cases on a contingency fee basis: (1) an action against Traveler's Insurance Company, for which he billed Westwood Management Company, the corporation employed by Tauber to manage his real estate holdings; and (2) a claim against an architect. However, Ginberg could not recall the fee arrangement in the architect matter. Fi-

nally, after he began the representation of Tauber in this action, Ginberg submitted two bills to Tauber in connection with another case, the "Savoy litigation"; $15,000 in the middle of the litigation and $45,000 at the end. The Savoy litigation involved a series of arbitration proceedings and litigation of complex legal and factual issues over a period of five years, which resulted in approximately $2 million in benefits to Tauber. Ginberg believed the fee in that case, like all the other fees he had billed Tauber, was "quite reasonable," but he testified that he had no agreement or understanding of any kind with Tauber about the basis of the fee. Tauber testified that although none of the attorney's fee bills he had previously received from Ginberg stated the number of hours Ginberg had spent on the matter at issue, he trusted Ginberg, and never had any reason to question the amount of the fee.

Ginberg presented the expert testimony of two trial attorneys, each of whom opined the $3,750,000 fee was reasonable. Charles Donnenfeld, who was a practicing lawyer and Chairman of the District of Columbia Board on Professional Responsibility, testified that in his opinion, the fee was reasonable under the criteria set forth in the disciplinary rules. He based his opinion on the assumption that both parties focused on the result obtained in the litigation, and the length of the litigation (ten years). He did not review any of the motions, pleadings, briefs, judges' opinions, or other documents associated with the litigation.

The other witness, George Shadoan, also opined that the reasonable value of Ginberg's services was thirty percent of the benefits resulting from those services. He testified that a number of relevant decisions recognize a range of reasonableness of between twenty-five percent and forty percent of the net recovery. Shadoan acknowledged, however, that the "relevant decisions" to which he referred were all "common fund" cases in which the lawyers were not entitled to a fee unless they prevailed on behalf of the client in establishing a common fund.[3] Although Shadoan did not believe a lodestar computation was an appropriate basis for determining the fee in this case, he testified that, even using that method, the requested fee was reasonable. His opinion was based on Ginberg's claim that he devoted substantially all his working time over a ten-year period to Tauber's action against the District. Accepting that assertion as fact, Shadoan opined that Ginberg would have spent approximately 12,000 hours, which at $280[4] an hour would yield a $3,360,000 fee.

Tauber presented two expert witnesses, Daniel Rezneck and Joseph Yablonski, each of whom estimated the reasonableness of the fee based on a review of Ginberg's time logs and diaries, the pleadings and papers in the litigation, the correspondence, files, and discovery materials. Both experts concluded that Mr. Ginberg expended approximately 1400 hours on the case and should be compensated between $285 and $325 per hour. The court accepted the higher of the two estimated rates as being most reasonable, and based on that rate, awarded Ginberg $389,788.75 in fees.[5] The court held that no "value addition" should be included because: (1) the $325 an hour fee was one at which "it is expected that excellent legal work will be done"; (2) the result, while beneficial to Tauber, was neither "as lucrative as it could have been," nor principally the result of Ginberg's legal services; (3) absent some agreement to the contrary, the notion that an attorney has an interest in the leasehold as a result of his legal work, is neither fair or reasonable. Finally, the court held that the case could not have gone to the jury because

> on this record, it's inconceivable a jury would have had the option to find any sort of contingency or value-based fee.

**3.** *See, e.g., Copeland v. Marshall,* 205 U.S.App. D.C. 390, 415 n. 57, 641 F.2d 880, 905 n. 57 (1980); *Passtou, Inc. v. Spring Valley Ctr.,* 501 A.2d 8, 10 (D.C.1985); *District of Columbia v. Green,* 381 A.2d 578, 580 (D.C.1977).

**4.** In Shadoan's opinion this amount was a reasonable hourly rate for an attorney with Ginberg's experience and skill.

**5.** This amount was determined by multiplying $325 by 1411 hours, less a fifteen percent downward adjustment for the routine performance of non-attorney 'ministerial' duties."

And the only evidence really here of the quantum meruit value is what was presented by the defense, so it's hard to see how a jury would have—could possibly have resulted in any more favorable verdict for the plaintiff in this case.

The trial court then entered judgment for $389,788.75. This appeal followed.

## II. Jury trial demand

■ This case presents an issue of first impression in this court, and no other jurisdiction, so far as we know, has dealt with this issue in precisely this context; *i.e.*, whether an attorney who has no agreement with his client concerning the amount of the fee to be paid, who sues the client to recover fees under a *quantum meruit* theory, is entitled to a jury trial. We hold that where it is undisputed that the client owes the attorney some fee for his legal representation, but there is no agreement concerning how the amount will be determined and the attorney has not informed the client of the basis of his fee, the trial court, not the jury, determines the amount of fee to be paid.

In rejecting Ginberg's jury demand, the trial court relied on this court's holding in *Kudon, supra*, 547 A.2d at 980. In *Kudon*, the lessee of postal meters sued the lessor alleging tortious interference with contractual relations with the United States Postal Service. Summary judgment was entered in favor of the lessor who then sought an award of attorneys' fees pursuant to the lease agreement. The lessee's request for a jury trial on that issue was denied, the trial court determined the amount of the fee to be awarded, and the lessee appealed.

■ In affirming the trial court's rejection of the jury trial demand in *Kudon*, we reviewed the origin and development of the Seventh Amendment right to a jury trial, relying on an "at law" and "in equity" distinction. We observed that the Seventh Amendment guaranteed the right to trial by jury in suits at common law, where the value in controversy exceeds twenty dollars:

[w]hile historically the [Seventh] [A]mendment was intended "to preserve the right to jury trial as it existed in 1791," *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005,

1008, 39 L.Ed.2d 260 (1974), the guarantees afforded have been interpreted to encompass "... not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered...." *Id.* (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830)).

*Kudon, supra*, 547 A.2d at 978. Additionally, we observed that the right to a jury trial depends on the nature of the question at issue rather than the character of the overall action. *Id.* (citing *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970)). Where the disputed issue is legal in nature, the right to a jury trial attaches; where, however, the issue is equitable in nature, there is no constitutional right to a jury trial. *See Ross, supra*, 396 U.S. at 538, 90 S.Ct. at 738.

■ In analyzing whether the controversy was "at law" or "in equity," the *Kudon* court applied the three factors the Supreme Court has said should be considered in determining whether an action is legal or equitable in nature: (1) the custom before the merger of law and equity; (2) the nature of the remedy being sought; and (3) the practical abilities and limitations of juries. *Kudon, supra*, 547 A.2d at 978 (citing *Ross, supra*, 396 U.S. at 538, 90 S.Ct. at 738).

First, the court concluded that an examination of the pre-merger custom indicated that traditionally, the court, not the jury, made a determination of attorneys' fees and costs. *Id.* at 979 (citing *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F.Supp. 118, 123 (N.D.Ill.1982); *Redshaw Credit Corp. v. Diamond*, 686 F.Supp. 674 (E.D.Tenn.1988)). Second, "the fact that a claim for attorneys' fees can be characterized as one for monetary damages does not compel its classification as a legal remedy." *Id.* (citations omitted). Third, given the court's "presumed expertise ... in matters of attorney fees, ... [the] time and expense which would be required to educate lay jurors on

those matters about which the court is presumed an expert and [ ] the unacceptable expense and delay of bifurcating trials in order to separate issues of liability from lawyer skills and preparedness, ... we believe that the *question of what constitutes a reasonable attorneys' fee ... is one better left for the court.*" *Id.* (internal citations omitted) (emphasis added); *see also Redshaw, supra,* 686 F.Supp. at 677 (although not totally incapable of jury determination, it is better for the court to determine what comprises a reasonable attorneys' fee).

■ In this case there is no "at law" factual dispute. Tauber agrees that he owes Ginberg a fee, and Ginberg concedes there was no agreement, formal or otherwise, concerning how the amount of fees would be determined.[6] In short, all that remained to be determined at trial was the amount of the fee. And, as we said in *Kudon,* that determination is one which sounds in equity rather than law. *See Kudon, supra,* 547 A.2d at 979. Therefore, we conclude, as the trial court did, that under *Kudon* the attorney fee dispute in this case is one that is better left for the court to decide, not the jury. *Id.*

Ginberg challenges the reliance on *Kudon* on three grounds: (1) the post-judgment award of attorneys' fees to a litigant who prevailed on the merits in *Kudon* was essentially an equitable "cleaning-up" of the underlying claim; (2) *Kudon*'s holding is tied to the facts of that case, and therefore, distinguishable from this case; and (3) *Kudon* is not a general declaration of principle that the Seventh Amendment right to a jury trial is unavailable where the claim for attorneys' fees is the issue itself, rather than ancillary to the underlying dispute, to be determined after resolution of the substantive issues. We disagree.

In *Kudon,* the court's analysis focused on defining the circumstances where the right to a jury trial under the Seventh Amendment attaches. Central to that holding was the conclusion that the Seventh Amendment guarantee of a right to a jury trial does not apply where the issue is: What is a reasonable attorneys' fee? *Id.* at 978–79. That conclusion is not dependent upon the fee claim being ancillary to the underlying contract dispute. Therefore, we see no basis for limiting the holding in *Kudon* to attorney fee determinations that are closely related or intertwined with some other dispute.

Ginberg also contends that *Maddox v. Jinkens,* 66 U.S.App.D.C. 362, 88 F.2d 744 (1936), *cert. denied,* 301 U.S. 699, 57 S.Ct. 929, 81 L.Ed. 1354 (1937), *Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963), and cases addressing the issue of attorneys' fees in the divorce[7] and common fund[8] context, require us to hold that this attorney fee dispute sounds "in law" rather than "in equity." The cases relied upon by Ginberg, however, are distinguishable because each involved the resolution of what were clearly "at law" disputes based on a contractual agreement for attorneys' fees where there were unresolved issues of fact. *See, e.g., Maddox, supra,* 66 U.S.App.D.C. at 364, 88 F.2d at 746; *Simler, supra,* 372 U.S. at 223, 83 S.Ct. at 611. The issue in those cases, which is a classic "at law" determination, was whether the parties had reached agreement concerning the payment of fees, *i.e.,* was there a contract requiring the payment of a fee to the attorney? In this case,

---

6. Our dissenting colleague, quoting Ginberg's testimony concerning his conversation with Tauber at the conclusion of the representation, concludes that Tauber is said to have agreed to a result-based fee and whether or not he did so is an issue "legal" in character entitling him to a jury trial. As we have observed, however, Ginberg did not contend that during the course of that conversation Tauber agreed to pay a specific fee based upon a percentage of the recovery. There is no doubt that Tauber acknowledges that Ginberg is entitled to recover a reasonable fee, but there is nothing in the record relating to any agreement as to the amount that fee would be. Therefore, as we have stated in the text, the only question to be determined, under these circumstances is: What is a reasonable fee? And, as we have said, that is a determination for the court to make, not a jury.

7. *King v. King,* 579 A.2d 659 (D.C.1990) (court asked to enforce attorneys' fee provision in separation agreement).

8. *McCally v. Hartford Accident & Indem. Co.,* 247 F.Supp. 444 (D.D.C.1965); *Moschetta v. Cross,* 241 F.Supp. 347 (D.D.C.1964); *First Nat'l Bank of Boston v. Brink,* 372 Mass. 257, 361 N.E.2d 406 (1977).

however, there was no dispute that the attorney was owed a fee and there was no dispute that the parties had reached no agreement concerning how the amount of the fee would be determined. The only issue in this case was what was a reasonable fee under the circumstances.

In *Maddox*, an attorney sued his client claiming she had agreed to pay him a retainer of $150, plus additional fees at specified rates. The attorney claimed he had performed $350 of additional services at those rates. The client acknowledged she was obligated to pay the $150 retainer, but denied that she had agreed to pay the additional amounts. Thus, a clear "at law" factual dispute was presented: did the client agree to pay the additional sums? The matter was referred to a master who found for the client, and the trial court affirmed that finding. The court of appeals also affirmed, on grounds not relevant here, but observed, in *dictum*, in language that Ginberg relies upon, that the attorney "was entitled to sue at law for the amount he claimed to be due him ... upon the contract for his services and he would be entitled to try such a case to the jury." *Maddox, supra,* 66 U.S.App.D.C. at 364, 88 F.2d at 746.

Even assuming that the *Maddox dictum* controls, it stands for the proposition that, in resolving factual issues regarding the existence of a contract, the parties are entitled to a jury trial. *See id.* Thus, the dispute in *Maddox* was like thousands of other garden-variety contract disputes where the intent of the parties must be determined by the fact-finder in an "at law" proceeding. *See, e.g., Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 635 (D.C.1993); *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.,* 684 F.2d 776, 780 (11th Cir.1982). Unlike the parties in *Maddox,* however, who disagreed concerning the nature of the agreement between them, Ginberg concedes there was no agreement; thus, there is nothing for a jury to resolve. The only question remaining is the amount of Ginberg's fee, and as we observed earlier, that determination is one better left to the trial court to resolve. *Kudon, supra,* 547

A.2d at 979; *see also Redshaw, supra,* 686 F.Supp. at 677.

We also reject Ginberg's reliance on *Simler* for much the same reason. The issue there was which of the two fee retainer contracts between the parties should govern the determination of the amount of the fee to which the attorney was entitled. *Simler, supra,* 372 U.S. at 223, 83 S.Ct. at 611. The client relied on the contract that was first executed, which provided that the reasonableness of the fee was to be set by the trial court. On the other hand, the attorney relied on a subsequent contract specifying that he was entitled to receive fifty percent of the recovery, under certain circumstances, as his fee. The Supreme Court held that plaintiff was entitled to a jury trial because the dispute was a traditionally legal one and not an action in equity. *Id.* The actual amount of the fee to be paid was specified by the two contracts involved, and the only question to be resolved was which contract applied. That question turned on whether the attorney obtained the client's agreement to the second contract by duress. The determination of whether agreement to a contract was induced by duress is a traditional "at law" factual question for a jury to decide. *Sind v. Pollin,* 356 A.2d 653, 656 (D.C.1976). Thus, *Simler* does no more than hold that when there is a factual dispute concerning which attorneys' fee contract applies to a transaction, a party is entitled to have a jury resolve that "at law" factual question. *See Simler, supra,* 372 U.S. at 223, 83 S.Ct. at 611.

Finally, *Redshaw, supra,* 686 F.Supp. at 674, a case cited with approval by the *Kudon* court, is especially instructive. Redshaw received a favorable verdict in a contract action after a trial by jury and thereafter sought an award of attorneys' fees from the court pursuant to a provision in the same contract that the jury had found should be enforced in Redshaw's favor. The defense contended that, to obtain an award of attorneys' fees, Redshaw was obligated to present evidence to the jury concerning the amount of the fee expended, which Redshaw had failed to do. The court rejected that claim, noting the jury had performed its function by resolving the facts in the legal dispute between the parties.

*Id.* at 676–77. In doing so, the jury, in effect, also resolved, in Redshaw's favor, the threshold question of whether Redshaw was entitled to receive attorneys' fees. The court then ruled that the determination of the amount of fees was for the court to make. *Id.* The *Redshaw* court thus concluded, as we have, that the question of whether the contract provides for the payment of a fee is an "at law" determination, which a party is entitled to have a jury resolve if there are facts in dispute. But the determination of the amount of the fee, unless the amount is fixed by the contract, is one for the court to determine.

■ In sum, for the reasons stated, we hold: first, the question of whether the client has agreed to pay fees to the attorney for his or her services is ordinarily a question to be resolved "at law"; and, the manner in which such fees are calculated is also an "at law" question if there is a dispute on that point between the parties. The parties are entitled to have both questions resolved by a jury if they wish.[9] Second, if a jury has resolved those questions in favor of an attorneys' fee award, or if, as here, there is no

agreement concerning how the amount of fees is to be calculated, the trial court, acting "in equity," determines the amount of the fee. Thus, in this case, the trial court did not err when it denied Ginberg's request for a jury trial.

### III. Lodestar fee calculation

■ Ginberg contends that the reasonable value of his services is 40 percent of the result obtained. He maintains the trial court erred in applying the lodestar method to determine reasonableness, arguing that an application of the factors in Rule 1.5 of the DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT would more accurately determine the true value of his services. We disagree for two reasons. First, the Rule 1.5 factors[10] are almost identical to the factors that are used in the lodestar method of fee calculation,[11] *see Johnson, supra,* 488 F.2d at 717–19, and the trial court properly applied those factors. *See Frazier v. Franklin Inv. Co.,* 468 A.2d 1338, 1341 n. 2 (D.C.1983) (the *Johnson* factors are applicable to the assessment of attorneys' fees in general). Thus,

---

9. In stating this, of course, we mean to cast no doubt upon the validity of D.C. Bar R. XIII, which provides in part that "[a]n attorney subject to the disciplinary jurisdiction of this Court shall be deemed to have agreed to arbitrate disputes over fees for legal services and disbursements related thereto when such arbitration is requested by a present or former client...." *See Kelley Drye & Warren v. Murray Indus.,* 623 F.Supp. 522, 525, 527 (D.N.J.1985) (by voluntarily subjecting itself to the disciplinary jurisdiction of state Supreme Court, law firm has relinquished its Seventh Amendment right to jury trial in favor of arbitration where client elects latter under state Bar rule).

10. Rule 1.5(a) factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skills requisite to perform the legal services properly;
(2) The likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the result obtained;
(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT, Rule 1.5.

11. The *Johnson* factors are:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal services properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.
*Johnson, supra,* 488 F.2d at 717–19.

Ginberg's contention that the court erred as a matter of law in applying the lodestar method is without merit.

Second, we find it ironic that Ginberg relies on Rule 1.5 in light of his own failure to abide by other provisions of the same rule that require an attorney to "communicate to the client, in writing, the basis or rate of the fee, before or within a reasonable time after commencing the representation." DISTRICT OF COLUMBIA RULES OF PROFESSIONAL CONDUCT Rule 1.5(b) (1985). Because Ginberg kept very few records, the trial court had virtually no guidance in its effort in determining a reasonable fee. For example, as we summarized above, Ginberg had no fee agreement with the client, kept no record of the work performed for the client for over ten years, and sent no interim bills to the client. Even Ginberg's "course of dealing" with his client provided no guidance in determining a reasonable fee for the Tauber litigation.

▆▆▆ The trial court had two choices in determining Ginberg's fee: apply an hourly rate based on lodestar, or award Ginberg a fee based on the result of the litigation. A trial court, however, should be wary of awarding a result-based fee unless the attorney seeking such a fee has obtained the client's agreement to that arrangement at the beginning of the representation. *See Spilker v. Hankin*, 88 U.S.App.D.C. 206, 210, 188 F.2d 35, 39 (1951) (fee contracts entered into long after the attorney-client relationship commenced are always subject to "the close scrutiny of the court, . . . [and often are] attended by a presumption of invalidity and overreaching"); *see also Pete v. United Mine Workers of Am. Welfare & Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 17, 517 F.2d 1275, 1291 (1975) (en banc) (citing *Spilker* and invalidating one-third contingency fee agreements with class mem-

bers solicited after judgment for liability). Thus, because "clients are wards of the court in regard to their relationship with their attorneys," *Spilker, supra,* 88 U.S.App. D.C. at 208–09, 188 F.2d at 37–38, the trial judge properly determined the attorney fee using the lodestar method.[12] *Frazier, supra,* 468 A.2d at 1341 (lodestar generally used to calculate reasonable attorneys' fees); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (there is a strong presumption that the lodestar figure represents a reasonable fee); *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984) (same). Therefore, we will not disturb the trial court's selection of the lodestar method, because "in the absence of anything more concrete, the benefit has to be given to the client." *Frazier, supra,* 468 A.2d at 1341 (trial court's fee determination will stand absent abuse of discretion).

Based on the expert testimony presented and an independent determination by the trial court of the service provided by Ginberg, the trial court found that Ginberg expended a total of 1411 hours on the case at a rate of $325 an hour. After making the adjustment discussed above, the court awarded Ginberg $389,788.75 in fees.[13] Because that fee award is adequately supported by the trial court's reasoning, and the factual record, *see id.* (we will not disturb judgment where trial court articulates reasons for fee award), the judgment of the trial court is,

*Affirmed.*

WAGNER, Chief Judge, dissenting:

In my view, the trial court erred in denying appellant the jury trial guaranteed him by the Seventh Amendment of the Constitution.[1] The pleadings and the record show

---

**12.** In applying the *Johnson* factors, the court determines the reasonable number of hours and the attorney's hourly rate. These figures are multiplied together to produce the "lodestar," or the reasonable value of the fees. *See Johnson, supra,* 488 F.2d at 719.

**13.** *See supra* note 5.

**1.** The Seventh Amendment provides that:

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

The Amendment is "fully applicable to courts established by Congress in the District of Colum-

that appellant's claim involved, not merely equitable rights and remedies, but claims legal in character. Specifically, appellant claimed that appellee had agreed to a result-based fee which depended upon the result obtained rather than being related solely to the hours expended in rendering the services. He contended that his claim that there was such an agreement was supported by a long-term prior course of dealing with appellee, which considered the quality of the result obtained, related correspondence, and appellee's assent to the arrangement in this case.[2] At trial, appellant offered expert testimony to establish a reasonable result-based fee for his services. Having denied appellant a jury trial, the trial court sitting without a jury, resolved the factual dispute as to whether the parties had a value-based agreement against appellant.

Such issues as whether there was an agreement, and the terms of the agreement are "legal" in character, and can, and should be submitted to a jury. *Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 611, 9 L.Ed.2d 691 (1963) (suit to determine amount of fees owed to lawyer by client under a contingent fee agreement is "legal" action subject to jury trial);[3] *see also Maddox v. Jinkens,* 66 App. D.C. 362, 363–64, 88 F.2d 744, 745–46 (attorney is entitled to sue at law upon claimed agreement for fee), *cert. de-*

*nied,* 301 U.S. 699, 57 S.Ct. 929, 81 L.Ed. 1354 (1937). "The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970). Thus, where the issue in dispute is legal in nature, a constitutional right to trial by jury attaches. *E.R.B., supra* note 1, 496 A.2d at 611. The majority, apparently agreeing with these principles, acknowledges that an attorney has the right to have a jury determine (1) whether the client has agreed to pay attorney fees and (2) "the manner in which such fees are calculated."[4] These are the very issues which appellant sought to have a jury determine in this case. Under the principles set forth in *Simler* and *Maddox,* appellant was entitled to the jury trial for which he made a timely demand.

This court's opinion in *Kudon v. f.m.e. Corp.,* 547 A.2d 976 (D.C.1988), upon which the trial court and the majority rely here, does not dictate otherwise. *Kudon* involved a suit for breach of contract in which the prevailing party sought an award of reasonable attorney's fees pursuant to a provision in the contract sued upon which provided for same. 547 A.2d at 977. Under such circumstances, the award of attorney's fees is incident to the main claim, and viewed as more

bia." *E.R.B. v. J.H.F.,* 496 A.2d 607, 610 n. 6 (D.C.1985).

**2.** Appellant testified concerning the claimed agreement as follows:
    Q. Tell us what you said and Dr. Tauber said?
    A. Dr. Tauber had asked one of his employees to get his, Dr. Tauber's car. And while we were waiting for the car to come around, pick up Dr. Tauber, I said, "Doctor, there hasn't been a day that's gone past that I haven't worked or thought about this case. And I think this would be a good time, if we can, to settle the question of my fee." Shall I continue on?
    Q. Yes?
    A. And I said to him, "What I'm willing to do at this point, at this time of my life, is to use the settlement figure as a guideline to settle the case—to settle the matter of my fee.["] And as I recall I said, "We will take the amount that I have recovered or been successful in obtaining for you at this point." That was the dollar amount. And I would take 30 percent of that amount to—as compensation for my services.

I said, "You will benefit for receiving a higher rental rate under the lease from here on in. And I will make no claim to that. You will get the benefit of that without any charge or claim by me on that. And I, as I say, just the percentage on what I have gotten for you to this point." And I said, "How does that sound to you?"
    And his answer was, "Fine." He says lawyers usually take or charge a third, I don't remember what verb he used, but that was the gist of it. He was satisfied.

**3.** In *Simler,* the respondent challenged the contingent fee contract as "the product of fraud and overreaching by the lawyer." 372 U.S. at 223, 83 S.Ct. at 611. Nevertheless, the Supreme Court held that "[t]he question[ ] involved ... traditional common-law issues which can be and should have been submitted to a jury under appropriate instructions as petitioner requested." *Id.*

**4.** *See* majority opinion at 551.

restitutional in nature, and thus as an equitable claim. *Id.* at 979 (citing *A.G. Becker-Kipnis & Co. v. Letterman Commodities,* 553 F.Supp. 118, 124 (N.D.Ill.1982)); *see also Cheek v. McGowan Elec. Supply Co.,* 511 So.2d 977, 979 (Fla.1987) (contractual provision authorizing attorney's fees is not part of the substantive claim because only intended to make the successful party whole). Relying on these and other cases, this court in *Kudon* determined that the request for attorney's fees in this contractual fee-shifting case was "more in the nature of an equitable, rather than a legal, remedy." *Kudon,* 547 A.2d at 979. Therefore, consistent with the rule that no constitutional right to a jury trial attaches when the issue is equitable in nature, *see E.R.B., supra* note 1, 496 A.2d at 611, this court rejected the assertion of the right to a jury trial upon the issue. It does not appear that this court had either the intention, or the occasion in *Kudon,* to reject the jury trial right for an attorney's contractual claim for fees against his client which was upheld by the Supreme Court in *Simler, supra,* 372 U.S. at 223, 83 S.Ct. at 611, and upheld in this jurisdiction in *Maddox, supra,* 66 App. D.C. 362, 363–64, 88 F.2d at 745–46. For these reasons, I respectfully dissent from the opinion of the court.