**ELBOW LAKE COOPERATIVE GRAIN COMPANY, a Minnesota Cooperative Association et al., Appellants,**

v.

**COMMODITY CREDIT CORPORATION, a Corporation Created by Act of Congress, Appellee.**

No. 15668.

United States Court of Appeals Eighth Circuit.

Jan. 16, 1958.

Rehearing Denied Feb. 28, 1958.

William M. Thomson, Minneapolis, Minn. (Herbert F. Horner and Gordon J. Berg, Minneapolis, Minn., were with him on the brief), for appellants.

Kenneth G. Owens, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Appellants herein are owners of country elevators or other local grain storage facilities in Minnesota. Appellee is a federal corporation created under Title 15 U.S.C.A. § 714 for the general purpose of " * * * stabilizing, supporting and protecting farm income and prices". With a few exceptions, not material here, all appellants during 1953 and 1954 individually agreed to store grain owned by appellee under a "Uniform Grain Storage Agreement", the pertinent provisions of which are stated below:

"12. Determination of Weights and Grades on Load Out—The class, grade, quality and quantity of all the grain loaded out by the warehouseman, whether stored, handled only, or direct transferred, and whether commingled or identity preserved, shall be determined on the basis of official weights and grades at the warehouse location, or if official weights or grades are not available at such point, on the basis of official weights and/or grades at destination or at the inspection point shown on the shipping order furnished the warehouseman, which, unless otherwise agreed, shall be the customary location on the route of shipment of an inspector licensed under the U. S. Grain Standards Act. Such inspection shall be for the account of Com-

modity. In the event either party calls for federal appeal inspection, such inspection shall be final and the expense thereof shall be for the account of the party requesting the appeal.

\* \* \* \*

19. Definitions—\* \* \* (e) Official Grades—Grades and grading factors established by an inspector licensed under the U. S. Grain Standards Act in accordance with the Official Grain Standards of the United States and protein content established by a recognized protein laboratory."

Under their contracts with appellee, appellants were obliged, at the direction of appellee, to deliver on board railroad boxcars quantities of flax for transportation to terminal warehouses, which, after grading and weighing, would satisfy the delivery requirements thereof and entitle appellants to agreed storage fees. Appellants have not challenged appellee's method of determining gross weight of the flax so delivered, but have alleged that its method of determining the grade, dockage and, therefore, net weight of such flax, upon which appellants' storage fees depended, was in violation of the Uniform Storage Agreements between the parties. Each of the appellants claims to have been damaged thereby in amounts varying from $210.00 to $3,347.47.

Nearly all of the involved carloads of flax were graded three times by either state or federal inspectors, all of whom were licensed under the U. S. Grain Standards Act, 7 U.S.C.A. § 71 et seq. "Probe" sample grades were first taken from the loaded boxcars by state inspectors at various points between the appellants' warehouses and the terminal locations. Two "belt run" samples were later taken simultaneously by state and federal inspectors as the unloaded flax was being received in the terminals. The federally taken "belt run" samples produced the "federal appeal grades" requested by appellee and upon which appellee based its settlements with appellants. The handling of the remaining carloads differs from the above procedure only in that no federal appeal grade was taken, settlements being made on the state "belt run" grades. Appellants claim that all settlements should have been made on the grades determined from the earlier "probe" samples taken in the loaded boxcars. Appellants admit that all the involved grades were made from samples taken by inspectors licensed under the U. S. Grain Standards Act, and that all such grades are "official".

After pleadings were filed and pretrial procedures were completed, appellee moved for summary judgment on the following grounds: (1) That the only issue before the court was the validity and officiality of the grain grades used in settlement between the parties, which issue was within the exclusive jurisdiction of the Secretary of Agriculture; (2) that appellants had failed to exhaust their administrative remedies in challenging the validity and officiality of such grades; and (3) that appellants had failed to allege facts upon which relief could be granted. After hearing was had on these questions, the trial court issued its memorandum opinion and order granting appellee's motion and dismissing the action on the ground that no genuine issue of material fact remained before the court and that appellee was entitled to judgment as a matter of law. Elbow Lake Cooperative Grain Co. v. Commodity Credit Corp., D.C. Minn., 1956, 144 F.Supp. 54, 65. The appeal here is taken from that judgment and order.

Under Rule 56(c), F.R.Civ.P., 28 U.S.C.A., a summary judgment " \* \* \* shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". However, summary judgment should not be granted unless the conceded facts "show defendant's right with such clarity as to leave

no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact resolved against the movant; * * *". Northwestern Auto Parts Co. v. Chicago, B. & Q. R. Co., 8 Cir., 1957, 240 F.2d 743, 746.

■ This action is essentially one for breach of contract. On a defendant's motion for summary judgment in such actions a trial court may grant a summary judgment only when, after examination of the pleadings and the pretrial proceedings, it becomes apparent that there has been no breach.

To comply with the terms of the contracts between it and appellants, appellee was required to pay storage fees on grain delivered to it by appellant warehousemen. An essential criterion to proper settlement was the determination of "official grades", as defined by Section 19(e) of the contract, and made from samples taken at a place and in a manner contemplated by the contracts. See Section 12 thereof supra. A reading of Section 12 shows that all settlement criteria, "class, grade, quality and quantity", would be determined after loadout onto boxcars, "at the warehouse location" if official weights and grades were available there. Official grades were defined by Section 19(e) of the contracts as those determined by "an inspector licensed under the U. S. Grain Standards Act in accordance with the official Grain Standards of the United States * *". It is agreed that no licensed inspectors were available at the warehouse locations on the loadout dates, and therefore contract compliance did not require that settlement grades be determined at those times and places.

In the event that "official grades" were not available at the warehouse locations, the contracts provided for such determinations "at destination or at the inspection point shown on the shipping order furnished the warehouseman, * * *". Obviously an official grade determination at either the "destination" or "the inspection point shown on the shipping order" would be within the terms of the contracts. However, no inspection points were designated on the shipping orders. Accordingly, under the contract, official weights and/or grades at "destination" were determinative.

Appellants maintain that that portion of the Uniform Grain Storage Agreement dealing with the determination of weights and grades is ambiguous and therefore presented a genuine issue of fact and that accordingly the court was in error in granting summary judgment. They claim that "the contract could not have been more ambiguous" and that "the language of Section 12 of the UGSA in providing that weights and grades shall be determined 'at destination' is completely inadequate". As to the meaning of "destination" as used in the contracts, the trial court concluded:

"The word 'destination' has no connotation which would suggest that the sampling of the grain should be taken either before or after the cars were unloaded. Moreover, it seems clear that the destination of this grain was the terminal warehouses where the grain was to be stored and not some railroad hold point whether such hold point was at the city where the terminal warehouse was located or at some point before the car had reached that terminus." Elbow Lake Cooperative Grain Co. v. Commodity Credit Corp., D.C.Minn. 1956, 144 F.Supp. 54, 59.

■ Appellants have vigorously challenged the trial court's power on motion for summary judgment to ascribe the above meaning to the word "destination" as used in Section 12. They have not suggested any other definition that would more aptly describe the meaning intended by the parties. Appellants claim that the trial court's definition is an interpretation of the terms of an ambiguous contract which is a determination of a genuine issue of a material fact not properly disposable on summary judgment. Where a contract is ambiguous, parol evidence is admissible to the issues of interpretation and construction

and a genuine issue of material fact is presented, and a trial of the issues must then be had. Farrand Optical Co. v. United States, D.C.N.Y.1952, 107 F.Supp. 93, 96. Contracts are subject to construction, however, only when ambiguous and ambiguity in a contract cannot be created by the mere assertion of a party to it. See Hardy v. Hardy, Cal.App., 1943, 135 P.2d 615. If, on a motion for summary judgment and after all doubts are resolved in favor of the party moved against, the trial court finds that the contract in question is not ambiguous, it may properly describe the plain and ordinary meaning of any of the contract terms. We think the terms of the contracts here leave no substantial doubt as to their meaning. There being no official weights and grades available at the warehouse location and no inspection points designated on the shipping orders, determination was accordingly to be made at "destination". "Destination" is an ordinary word and does not require expert testimony to determine its meaning. Funk & Wagnalls New Standard Dictionary of the English Language, 1952, defines "destination" as:

"1. The place set for a journey's end; the terminal point to which one directs his course, or to which the course of anything is directed; goal; mark; as, to reach one's *destination;* the *destination* of a parcel."

The rules of contract construction should not be permitted to create ambiguity where none exists or to change or twist the plain meaning of a simple agreement. We think the trial court's definition and usage of "destination" was the only one which could reasonably have been intended by the parties and accordingly no genuine issue of material fact was decided thereby.

Appellants have also pointed to surrounding questions of local custom, the nature of flax or the fact that damage to flax is inherent in its handling as issues of fact. They are not genuine issues herein as they are not controlling. As stated by this court in Durasteel Co. v. Great Lakes Steel Corp., 8 Cir., 1953, 205 F.2d 438, 441:

"An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S. Federal Courts § 144, p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment."

The real issue in this case is whether the admittedly official grades relied upon by appellee in settlement of its contracts with appellants were based upon samples taken at the "destination" of the flax shipments, as authorized by the contracts. From the record in this case and appellants' admissions thereto, it manifestly appears that such grades were made from samples taken at the "destination" of each involved shipment and that the case accordingly involved no genuine issue of fact and summary judgment was properly granted.

It being conclusively established that appellee was entitled to summary judgment on its motion, it accordingly becomes unnecessary to discuss the additional grounds claimed therein. See the trial court's opinion, 144 F.Supp 54, 61, 62.

Affirmed.