**SYRING–WORKMAN, INC., and American National Fire Insurance Company, Appellants,**

v.

**Joseph H. R. COLBERT, Appellee.**

**No. 5522.**

Court of Civil Appeals of Texas, Waco.

Jan. 23, 1976.

Rehearings Denied Feb. 19, 1976.

Kendall, Randle, Finch & Osborn, Terrence Kendall, Austin, for appellants.

Stayton, Maloney, Hearne & Babb, William M. Knolle, Austin, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by Syring-Workman, Inc., and·American National Fire Insurance Company from judgment against them in favor of Joseph H. R. Colbert for $13,742.43.

The case arose out of a construction contract to remodel and renovate a 3-story office building in Austin, Texas. Syring-Workman was the general contractor; Colbert was the owner; and the Insurance Company was surety on the contractor's performance bond.

Syring-Workman as plaintiff sued Colbert as defendant alleging plaintiff as contractor and defendant as owner, executed a written contract on January 3, 1973 whereby plaintiff would remodel defendant's office building for costs plus 10%; that plaintiff was due $171,796.40 less $99,491.73 which had been paid, leaving a balance of $72,304.67; that defendant refuses to pay such balance of $72,304.67 due under such contract; prayed judgment for $72,304.67; and alternatively for the reasonable worth of such services rendered.

Defendant answered that the written contract provided the maximum cost of the project was not to exceed $120,000; that he had paid such maximum cost and was not liable further to plaintiff. Defendant then as cross plaintiff sued Syring-Workman and

its performance bondsmen as cross defendants for damages, for not completing the 2nd and 3rd floors, for increased interest on his loan; and for loss of rentals.

Trial was to a jury pertinent findings of which are partially summarized as follows:

1) "Do you find from a preponderance of the evidence that Workman and Colbert, at the time they signed the contract on January 3, 1973, did not agree that the provision, 'The Approximate Maximum Cost shall be $120,000.' contained in Article 6 of the contract, meant that the contemplated remodeling and renovation of the Heierman Building under the contract would be done for a maximum cost, including the Contractor's fee, of $120,000.?

   "Answer: They did agree that the work would be done for a maximum cost of $120,000, including the Contractor's fee."

2) The costs necessarily incurred in the proper performance of the work furnished by Syring-Workman under the January 3, 1973 contract, including a 10% Contractor's fee was $140,651.36.

3) Colbert and Workman did contemplate partitioning and finishing the 2nd and 3rd floors.

4) $23,260. was the reasonable and necessary cost in 1973 to partition and finish the 2nd and 3rd floors.

5) $5,101.92 is the reasonable value of "extras furnished by Syring-Workman."

6) Colbert paid $6,905.12 to 3rd parties to complete the project as contemplated by the January 3, 1973 contract.

7) Workman contemplated or should have contemplated that if he failed to complete the contract by September 3, 1973, Colbert would lose rental from the 2nd and 3rd floors.

8) $9,187.50 is the value of such rental.

The trial court rendered judgment on the verdict; holding the contract provided for a maximum cost to Colbert of $120,000; and awarded Colbert $13,742.43 against cross defendants. (The court added the extras of $5,101.92 to the $120,000. maximum contract price, then subtracted the $99,491.75 paid by Colbert, the $6,905.12 Colbert paid to 3rd parties, the $23,260. necessary to complete the 2nd and 3rd floors; and the $9,187.50 loss of rentals).

Syring-Workman and the Insurance Company appeal on 7 points contending:

1) Since under the written agreement no maximum cost of the proposed work was agreed to, but only a provision that the "approximate maximum" cost should be $120,000. it was error for the trial court to submit Issue 1, asking the jury if that provision "meant that the contemplated remodeling and renovation would be done for a maximum of $120,000.", over appellants' objection that the issue assumes to vary the terms of a written contract, which neither party alleged was ambiguous.

2) The trial court erred in refusing to grant Syring-Workman's Motion for Judgment Notwithstanding the Verdict; on the undisputed facts, judgment in its favor should be rendered for the amounts billed and not challenged, less the amounts paid.

3) Alternatively the trial court erred in refusing to enter judgment for Syring-Workman for the amount of the costs necessarily incurred in performance of the work less the amounts previously paid to Syring-Workman.

■ Syring-Workman is a general contractor; Colbert is a lawyer who purchased a 100-year old 3-story building in downtown Austin, and decided to have it remodeled and renovated so that he could occupy the 1st floor as his office and rent the 2nd and 3rd floors to others. Colbert employed an architect and met with Workman in October, 1972, explaining how he wanted the remodeling done. Workman said he could do the job for $120,000. and went to work

tearing out partitions and removing debris and other work necessary before actual remodeling could begin. On January 3, 1973, Syring-Workman and Colbert signed a written contract which provides that Syring-Workman will remodel and renovate the office building "according to plans and specifications to be prepared" by architect Wade; that the job be completed on or before September 3, 1973; that the contractor be reimbursed for costs of the work paid by the contractor plus 10%. The contract was on a printed form which had the words "The maximum cost to the owner, including the cost of the work, and the contractor's fee is guaranteed not to exceed $        ." The foregoing was deleted by Colbert's attorney who prepared the contract, and the following substituted therefor: "The approximate maximum cost shall be $120,000."

Workman continued to make the building ready after January 3, 1973. The architect did not furnish plans for the 1st floor until April and has never furnished plans for the 2nd and 3rd floors. There is evidence that Workman "understood" what he was to do, and Workman testified if he had had plans and specifications in January he could have finished by September 3rd. There is evidence that Colbert considered the contract to an absolute maximum cost of $120,000; that Workman did not so consider it; and architect Wade testified the contract was a guideline: to Colbert not to require a job to cost over $120,000., to Wade not to design a job to cost over $120,000., and to Workman to keep construction costs under $120,000.

There is evidence that some $10,000. more was required by the architect for the air conditioning than was envisioned; that a more expensive elevator was required by the architect than was envisioned; as well as other items. There is evidence that in April, 1973, when only some $13,000. had been expended Colbert knew the job would cost much more than $120,000, but did nothing to stop the project. After Colbert had paid $99,491.73 to Workman he refused to pay more and Workman stopped the job.

The 1st floor was finished as was most of the other work except partitioning and completing the 2nd and 3rd floors. Colbert had received a $120,000. loan initially, and paid the $99,491.73 out of such as well as the interest on the loan. Colbert in December, 1973, tried to borrow additional money to continue the project.

█ The contract in plain words of easy understanding provides: "The Approximate Maximum Cost shall be $120,000." There is no way that this could mean that the maximum cost was $120,000, and no more. Clearly "approximately" contemplates the possibility of a reasonable variance between the stated figure and the final cost. *Norton v. Menard Lumber Company*, CCA (San Antonio), NWH, 523 S.W.2d 791. Parol evidence cannot contradict the clear terms of the written contract. *Hubacek v. Ennis State Bank*, S.Ct., 317 S.W.2d 30.

Point 1 is sustained. The trial court erred in submitting Issue 1, and the judgment must be reversed.

The interest of justice requires that the cause be remanded for a new trial on the theory that the parties agreed to an "approximate maximum cost of $120,000." plus additional work authorized by defendant. The amount of variance from the $120,000. would undoubtedly be affected by the evidence recited, if believed by the fact finder.

Moreover from the record as a whole we believe a remand in the interest of justice. *Scott v. Liebman*, S.Ct., 404 S.W.2d 288; *Adams v. Herd*, CCA (Waco) NWH, 526 S.W.2d 295.

Reversed and remanded.