**URBAN MASONRY CORPORATION,**
Appellant,

v.

**N&N CONTRACTORS, INC., Appellee.**

No. 94–CV–283.

District of Columbia Court of Appeals.

Argued March 22, 1995.

Decided May 16, 1996.

Stephen M. Seeger, Washington, DC, for appellant.

Jeffrey G. Gilmore, Vienna, VA, with whom Shannon J. Briglia and Brian P. Waagner were on the brief, for appellee.

Before WAGNER, Chief Judge, and KING, Associate Judge, and PRYOR, Senior Judge.

KING, Associate Judge:

This appeal stems from a breach of contract claim brought by N & N Contractors, Inc., ("N & N") against Urban Masonry Corporation ("Urban"). Urban was a subcontractor on a major construction project in the District of Columbia (the "District") and N & N was a subcontractor of Urban. In its complaint, N & N alleged that it had performed all "conditions precedent for payment" under the contract and that, despite repeated requests for payment, Urban breached the contract by refusing to pay N & N. N & N sought compensation for: (1) installing sixty-eight precast concrete panels which N & N contended were in excess of the number of panels called for by the subcontract; (2) experiencing delays and disruptions completing the project that were caused by the material supplier's failure to timely supply the panels; and (3) attorneys' fees and interest pursuant to the subcontract. The trial court granted N & N's motion for partial summary judgment on the compensation issue relating to the sixty-eight panels, and, following an evidentiary hearing, awarded N & N damages and attorneys' fees associated with that issue. The breach of

contract claim relating to the delays and disruptions issue, and attorneys' fees associated with that issue, were tried to a jury which returned a verdict awarding N & N damages, attorneys' fees, and interest. In this appeal, Urban challenges the partial summary judgment ruling, the jury verdict, and the damage awards. We affirm in all respects but remand the award of attorneys' fees made by the jury for further proceedings.

## I.

### A. Background

The Blake Construction Company ("Blake"), the general contractor for construction of the Portals Office Building in the District (the "project"), subcontracted with Bogert Precast, Inc. ("Bogert") for the manufacture and delivery to the project of the precast concrete panels, and with Urban, for the construction of all masonry, including installation of the precast concrete panels. On November 27, 1990, Urban subcontracted with N & N to install 297 pieces of welded precast concrete for the project. The Urban/N & N subcontract provided that in the event of a dispute arising out of the subcontract, the prevailing party was entitled to an award of attorneys' fees;[1] however, Article 1(f)[2] of the same subcontract attached and incorporated the Blake/Urban contract, including specifically Articles 28[3] and 29.[4] Those articles provide that each party should bear its own attorneys' fees and costs incurred in the resolution of any dispute between the parties.

### B. N & N's Breach of Contract Claim

After N & N began installing the panels it became obvious, apparently because the pan-

1. Urban/N & N subcontract Article 1(g) provides:

 Should either party employ an attorney to institute suit or other proceedings to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement, or to collect damages for the breach of this Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, charges, and expenses expended or incurred therein.

2. Subcontract Article 1(f) provides:

 All claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided in the manner provided in the Contract between General Contractor and Contractor,* and Subcontractor consents to be made a party to any arbitration or litigation proceeding to which Contractor is a party pertaining to Subcontractor's work. Subcontractor agrees to submit any and all requests for payment for costs in excess of this Contract Price, or for additional time, due to acts or omissions in any way attributable to General Contractor, Owner or Architect within the deadlines provided in the Contract Documents or the Contract between General Contractor and Contractor. Contractor will submit such claims to the General Contractor. Subcontractor agrees to accept as full payment the amount, if any, actually received by Contractor as a result of such claims.
 * As stated in prime contract Articles # 28 and # 29 of Attachment "A" of this contract.

3. Article 28 of the Blake/Urban contract provides:

 (a) This clause is applicable to all disputes arising under or relating to the Prime Contract and/or the Owner's conduct thereunder.
 (b) All disputes arising under or relating to the Prime Contract and/or the Owner's conduct thereunder shall be governed by and resolved in accordance with the Disputes Clause of the Prime Contract to the extent permitted by law, which clause is hereby incorporated by reference herein.

 \* \* \* \* \* \*

 (f) Subcontractor shall be responsible for the pursuit of any claim, suit or appeal under this Article submitted by Contractor to Owner solely on Subcontractor's behalf. Subcontractor shall be responsible for all costs, expenses and attorneys' fees incurred in connection therewith. With respect to claims, suits or appeals in the joint interest of Contractor and Subcontractor, Contractor shall be responsible for pursuing such claim, suit or appeal and each party shall be responsible for its own costs, expenses and attorneys' fees incurred.

 \* \* \* \* \* \*

4. Article 29 of the Blake/Urban contract provides:

 All disputes arising under the Contract solely between the Prime Contractor and the Subcontractor shall be resolved by a judicial proceeding in a court of competent jurisdiction located in the state in which the project is located. The laws of the state in which the project is located (without reference to choice of law rules) shall govern disputes arising solely between the Contractor and Subcontractor. Each party shall be responsible for its own costs, expenses and attorneys' fees.

els were smaller than the size specified in the plans, that additional precast concrete panels would be required to complete the project. Concluding that installation of the additional pieces was beyond the scope of the Urban/N & N subcontract, N & N requested, and received, both Urban's permission to proceed with the project, and Urban's promise of additional compensation for installing the sixty-eight additional pieces.[5] N & N ultimately installed the sixty-eight precast pieces, but Urban declined to pay N & N for the additional work. N & N brought this action to recover, *inter alia*, the cost of installation of the additional pieces. The trial court granted N & N's motion for partial summary judgment on the issue of Urban's liability for payment for installation of the extra sixty-eight concrete panels. At a subsequent evidentiary hearing, the trial court awarded damages in the amount of $17,000 and attorneys' fees in the amount of $4,550 on this aspect of the claim.

N & N also sued to recover damages incurred by it due to delays and disruption caused by Bogert's failure to supply the material to be installed. Specifically the complaint alleges N & N experienced a loss in productivity and accumulated additional costs associated with Bogert's failure to: (1) supply the precast panels or steel connections for installing those panels in the predetermined sequence; and (2) install the "control lines" which had to be in place before N & N could erect the panels. N & N documented its resulting loss of productivity on a "Lost Time Log" and submitted its costs to Urban, consistent with paragraph 1(f) of the subcontract. The jury awarded N & N $36,500 in

---

5. Paul Warton, Urban's project manager, who initialed the change in the first paragraph of the Urban/N & N subcontract, ("all pieces requiring welded connections approx. 297 (+/−),") sent a speed memo ("speed memo") to N & N on March 15, 1991 stating:

> Pursuant [to] our conversation today, proceed with the installation of the welded precast stones. We acknowledge the following: (1) the quantity of precast exceeds Bogert original count by *68* pieces (2) these pieces are outside the scope of the work (3) entitlement to additional costs are [sic] valid.

Fred Hayes, Urban's President who signed the Urban/N & N subcontract on Urban's behalf, also acknowledged N & N's request for additional compensation and promised to pass on the claims to Blake in a March 18, 1991 letter ("letter"). The letter states:

> Dear Tom,
> I reviewed the circumstances on the job with my staff. Several issues exist, they are as follows:
> (1) Contract between Urban and N & N Contractors, Inc.
> (2) Pieces exceeding the original piece count by Bogert to N & N and Urban Masonry Corporation. Value of that work.
> (3) Additional time and equipment due to Bogert's slow delivery and inaccurate fabrication. Value of that work.
> First, let me say any contract with you is handled not only to the letter but more important, to the *spirit* of the agreement. You helped us on the price and we appreciate it. You can depend on our full support on any request.
> We have submitted your back-up and claim for cost to Blake. Some of the problems are Blake and their layout. The majority of the problems seem to be created by Bogert Precast. We will allow Blake and Bogert another week to respond to the claim. After that we must take action. At this point we are proceeding in accordance with the contract by notifying Blake of our claim. We expect a positive resolution. The contract between Urban and N & N have provisions for settling this issue against Blake and/or the Owner. I will assure you all our remedies will be used to resolve this but by all means we must complete the work as soon as possible.
> It is clear that the job has three hundred sixty-five (365) pieces not two hundred ninety-seven (297), Bogert originally indicated. We know the job has not been increased in size. Obviously, the original pieces have been make [sic] smaller. Peter Frey and Fred from your office reviewed the latest drawings and agreed on the quantity. We are in the process of sending the proposal for these additional sixty-eight pieces (68) to Blake Construction. We used the base contract unit price ($285.00/ea) to determine your part of this change. These documents should be in Blake's possession by Wednesday, March 20th, 1991.
> [T]he submittal as outlined in item # 1 is including all delays up to and including February 21, 1991. We used the manhour unit of $47.00/per hours [sic] for this proposal. We submitted the hours as stated. I do not believe we will receive credit for all of them. One assurance is you will receive everything paid on your behalf.
> I have given instructions to my people to expedite any and all payments on your behalf. I will see the retention is reduced immediately even though our retention has not been lowered yet. If I can be of any further assistance let me know.

damages and $25,000 in attorneys' fees on this claim.[6]

## II.

## Scope of Review

Summary judgment is proper if, accepting the allegations of the complaint as true, and construing all the facts and inferences in favor of the nonmoving party, the record shows there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Nader v. de Toledano*, 408 A.2d 31, 41 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super. Ct. Civ. R. 56(c) (1995). On appeal, we review *de novo*, determining whether the trial court properly concluded there was no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Northbrook Ins. Co. v. United Servs. Auto. Ass'n*, 626 A.2d 915, 917 (D.C.1993). We will affirm the trial court if we find that the "pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits," if any ... support that conclusion. *Byrd v. Allstate Ins. Co.*, 622 A.2d 691, 693 (D.C. 1993) (quoting Super. Ct. Civ. R. 56(c)).

## III.

## DISCUSSION

### A. The Grant of Partial Summary Judgment

Urban contends that summary judgment on the claim seeking compensation to install the sixty-eight additional panels was improper because the parties had differing interpretations of the clause defining the scope of N & N's work, and there are genuine issues of material fact with regard to N & N's entitlement to compensation for installing the sixty-eight additional precast pieces. The subcontract term at issue provides:

> Subcontractor agrees to supply all necessary equipment (except site tower crane), tools and labor required to install the precast concrete (297 pieces) * for this project in accordance with Contract Documents between Owner and General Contractor ("Blake") including but not limited to Specification Sections 3450 and 3405 (the "Contract Documents") and approved shop drawings and the terms and conditions set forth below:
>
> * *All pieces requiring welded connections Approx. 297(+/−).*

## ALL FOR THE SUM OF $84,600.00 (EIGHTY–FOUR THOUSAND SIX HUNDRED DOLLARS)[7]

Urban, maintaining that the term "Approx. 297(+/−)" means N & N would install *all* of the precast pieces requiring welded connections, without regard to the actual number of pieces required, contends that N & N's contrary interpretation demonstrates that the provision is ambiguous, requiring extrinsic

---

**6.** N & N represents in its brief that: On November 6, 1991, prior to the filing of this claim, Urban and Blake reached a "walk-away" settlement of all claims on the project. This settlement did not account for N & N's claims for additional compensation and the cost associated with the work disruption. Neither Urban nor Blake informed N & N of the negotiations, or of the eventual settlement until N & N filed this action. N & N contends that Urban had an affirmative obligation to pass through N & N's claims for compensation for the additional sixty-eight pieces and delay and disruption costs to Blake, which it failed to do, thus breaching the subcontract.

 Finding no genuine issue of material facts in dispute regarding N & N's entitlement to that portion of the claim relating to the additional sixty-eight panels, the trial court granted partial summary judgment on that issue. The jury found for N & N, on the claim that Urban breached the subcontract, and awarded N & N damages. Urban does not challenge, in this court, the jury's finding that it breached the contract; it does contend, however, that the jury's finding with respect to the award of interest cannot be sustained. We disagree for the reasons set forth in the "Interest Award" discussion on page 36, *infra*.

**7.** The italicized portion is handwritten in the original and initialed by Paul Wharton, Urban's project manager. Although other changes appear in the contract which are initialed by the parties' respective presidents who signed the document, Urban does not challenge that the handwritten addition forms a part of the parties' contract.

evidence to resolve, and therefore, summary judgment does not lie.[8]

■ A contract is ambiguous if it is "reasonably susceptible of different constructions or interpretations," *Papago Tribal Util. Auth. v. Federal Energy Regulatory Comm'n*, 723 F.2d 950, 955 (D.C.1983), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 820 (1984) ("*Papago*") (citation omitted); *see also Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp.*, 684 F.2d 776, 780 (11th Cir.1982) ("*Fabrica*"), and the trial court makes that determination as a matter of law. *Sundown, Inc. v. Canal Square Assocs.*, 390 A.2d 421, 432 (D.C.1978). The parties' differing interpretations of the contract, however, does not establish that an ambiguity exists. *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983); *Papago, supra*, 723 F.2d at 955. Therefore, we reject Urban's contention that the parties' differing interpretations established that its terms are ambiguous. *See Capital Constr. Co. v. Plaza West Co-op. Ass'n*, 604 A.2d 428, 432 (D.C. 1992) (a party must support its allegation of ambiguity); *Elbow Lake Co-op. Grain Co. v. Commodity Credit Corp.*, 251 F.2d 633, 637 (8th Cir.1958).

■ Although the trial judge did not state, in so many words, that the terms of the contract were not ambiguous, the judge unmistakably made that finding when she ruled that the need for sixty-eight additional precast pieces was beyond the scope of the subcontract and that N & N was entitled to additional compensation for installing them. The judge granted N & N's partial summary judgment motion because, referring to the

speed memo,[9] "[i]t appear[s] that there is no genuine issue of material fact in dispute regarding N & N's entitlement to [compensation] ... relating to sixty-eight pieces of precast concrete...."

Urban contends, however,[10] that the trial court may not consider extrinsic evidence, *i.e.*, the speed memo, in deciding a motion for summary judgment. Under the circumstances presented here we disagree, and conclude that the trial court did not err in considering the contents of the speed memo. Super. Ct. Civ. R. 56(c); *NRM Corp., supra*, 244 U.S.App. D.C. at 362, 758 F.2d at 682; *Byrd, supra*, 622 A.2d at 693 (The court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits," in disposing of a motion for summary judgment). *See Farmland, supra*, 284 U.S.App. D.C. at 280, 904 F.2d at 736.

*Farmland*, which is indistinguishable from the circumstances presented here, involved the interpretation of several grain contracts between Farmland Industries Inc. ("Farmland") and the Grain Board of Iraq ("Grain Board"). The parties disputed the meaning of the carrying charge provision in several large wheat sales contracts. The contracts provided that the carriers would pay Farmland certain charges if the ships were late, and incentive payments if Farmland loaded the ships ahead of schedule. In the typical F.O.B. sales contract, the buyer would be responsible for paying these charges, but in these contracts, the parties sought to vary the normal commercial understanding, by providing that the carriers would pay these charges. During the course of performance,

8. The trial court found that each panel, regardless of size, took the same amount of time to install; therefore, installation of the additional panels required a corresponding additional amount of time to install. That finding is not challenged in this appeal.

9. See note 5, *supra*.

10. Urban argues that the following cases, read together, bar the trial court's reliance on extrinsic evidence in a summary judgment motion. *Farmland Indus., Inc. v. Grain Bd. of Iraq*, 284 U.S.App. D.C. 276, 280, 904 F.2d 732, 736 (1990); *NRM Corp. v. Hercules, Inc.*, 244 U.S.App. D.C. 356, 362, 758 F.2d 676, 682

(1985); *Pennsylvania Ave. Dev. Corp. v. One Parcel of Land in the District of Columbia*, 216 U.S.App. D.C. 131, 134, 670 F.2d 289, 292 (1981); *West v. Smith*, 101 U.S. 263, 270, 25 L.Ed. 809 (1879); *Elbow Lake, supra*, 251 F.2d 633; *Brooks v. Renner & Co.*, 243 Ark. 226, 419 S.W.2d 305, 306 (1967).

Urban overstates the holdings of these cases, however, and ignores the settled principle, which none of the cited cases rejected, that where the extrinsic evidence is so *unambiguous* that it points to a single construction, the court may rely on such evidence in a summary judgment motion. *See Farmland, supra*, 284 U.S.App. D.C. at 280, 904 F.2d at 736 (affirming this principle); *NRM Corp., supra*, 758 F.2d at 682 (same).

Farmland sent invoices for these payments to the carriers and kept "internal confirmation of sale" records. When the carriers refused to pay any of these charges, Farmland brought suit against them and the Grain Board. The district court granted the Grain Board's motion for summary judgment, "determining that although the carrying charge provision [in the underlying contract] was ambiguous, extrinsic evidence" clarified its meaning. *Id.* at 279, 904 F.2d at 735. The U.S. Court of Appeals, observing that:

> [W]hen the meaning of a contract provision is facially uncertain, a court may resort to an examination of extrinsic evidence, such as statements, course of conduct, and contemporaneous correspondence, aimed at discerning the intent of the parties.... [I]f that evidence demonstrates that only one view is reasonable—notwithstanding the facial ambiguity—the court must decide the contract interpretation question as a matter of law.

*Id.* at 280, 904 F.2d at 736, (citations omitted), held that "all the direct evidence—the testimony of individuals involved in the negotiation and implementation of the contracts and the 'contemporaneous correspondence' [11] between the parties—support the ·... [movant's] interpretation of the clause." *Farmland, supra,* 284 U.S.App.D.C. at 280, 904 F.2d at 736.

In this case, N & N's request for additional compensation and Urban's speed memo in response to that request are comparable to the "internal confirmation of sale" documents, the telexes, and invoices which were considered by the trial court in *Farmland* in support of its grant of the summary judgment. We therefore conclude that the trial court here, in deciding the motion for summary judgment, could properly consider N & N's request and the speed memo response in resolving N & N's summary judgment motion.

■ Urban offered no evidence rebutting the import of the speed memo and the letter from Hayes, relying instead on the inference that "Approx. (+/−)" suggests a variable number with no outer limit. We agree with Urban, and N & N concedes, that the term "Approx. 297 (+/−)" is not the sort of contract language that absolutely limits N & N's obligation to a specific number of precast pieces, *i.e.*, 297 panels. We cannot agree, however,—and the contemporaneous correspondence supports that conclusion—that this language contemplates a twenty-three percent variation, which is the variance produced by the additional sixty-eight pieces. Moreover, all of the authorities we have found, and Urban cites none to the contrary, hold that the term "approximately" means a range considerably smaller than the one present here. *See Eastern Serv. Management Co. v. United States*, 363 F.2d 729, 732 (4th Cir.1966) ("The use of 'approximately' is only to provide against accidental variations arising from slight and unimportant excesses or deficiencies ... [and] error of over 6% ... is not within the term 'approximately' ...") (citations omitted); *Syring–Workman, Inc. v. Colbert*, 532 S.W.2d 708, 710 (Tex.Ct.App. 1976) ("[A]pproximately contemplates the possibility of a reasonable variance between the stated figure and final cost"); *Commonwealth Dep't of Transp. v. Paoli Constr. Co.*, 35 Pa.Cmwlth. 390, 386 A.2d 173, 175 (1978) ("the law is clear that contractors performing work and incurring costs beyond the scope of the contract are entitled to compensation therefor"). We therefore hold that summary judgment was proper.[12]

---

**11.** For each sales contract, Farmland drafted an internal "confirmation of sale" document stating that the carriers were responsible for the carrying charges. Additionally, as the carrying charges increased, Farmland sent several telexes to the carriers and the Grain Board, in which it indicated that the carriers were responsible for paying the carrying charges. The court of appeals characterized these documents as "contemporaneous correspondence." *Farmland, supra,* 284 U.S.App. D.C. at 281, 904 F.2d at 737.

**12.** Urban also argues that partial summary judgment was granted prematurely because the delay and disruption issues were inextricably woven into the issue of compensation for the sixty-eight additional precast pieces. We decline to consider this issue because it was not raised in the trial court. *NRM Corp., supra,* 244 U.S.App. D.C. at 360, 758 F.2d at 680 (court of appeals will not disturb a grant of summary judgment on the basis of a factual dispute not presented to the trial court); *Cannon v. District of Columbia,* 569

## B. Attorneys' Fees Awarded Under the Urban/N & N Subcontract

Following the entry of partial summary judgment, the trial court conducted an "*ex parte*" proof of damages evidentiary hearing and awarded N & N $17,000 in damages and $4,550 in attorneys' fees.[13] At the trial on the delays and disruptions claim, the trial court submitted both the issue of entitlement to, and the issue of the reasonableness of, the attorneys' fees to the jury. Urban now challenges the attorneys' fees award made by the jury on grounds that: (1) because the attorneys' fees provisions of the contract are inconsistent and ambiguous, the American Rule must be applied;[14] and (2) even if it was proper to permit the jury to determine the entitlement issue, the court erred in submitting the reasonableness issue to the jury because N & N did not submit paid bills, with supporting testimony that the attorneys' fees requested were reasonable. We reject the contention that any ambiguity requires application of the American Rule, but conclude, as to the latter contention, that the reasonableness of an award of attorneys' fees should be determined by the court rather than the jury.

First, we find no support whatsoever for Urban's contention that unless the contract *unambiguously* provides for attorneys' fees, the American Rule applies. Under the American Rule each litigant bears his or her own attorneys' fees and litigation expenses; however, one exception to that rule allows parties to provide, by contract, for recovery of attorneys' fees and litigation expenses by a prevailing party, such as the provision found in section 1(g) of the Urban/N & N subcontract.[15] We are aware of no legal authority, however, supporting Urban's interpretation of the American Rule and the authorities cited by Urban do not support its contention.[16] Whether an attorneys' fees award is available is a matter of contract interpretation by the trial judge, unless there is an ambiguity that needs to be resolved to determine the intention of the parties. In that case, the entitlement question must be resolved by the fact-finder. *Redshaw Credit Corp. v. Diamond*, 686 F.Supp. 674, 677 (E.D.Tenn.1988) (jury must decide issue of whether the contract, which includes an attorney fee-shifting provision, is to be enforced; if so, the judge determines the amount of the fees); *Rivers & Bryan, Inc. v. HBE Corp.*, 628 A.2d 631, 635 (D.C. 1993) (if the court determines that a contract

A.2d 595, 596 (D.C.1990) (issues not raised at trial are waived on appeal).

13. Although this proceeding is referred to by the parties as an *ex parte* proof hearing, both N & N and Urban fully participated. Urban's request that the amount of damages be decided by a jury was rejected by the trial court. That ruling is not challenged in this appeal.

14. The attorneys' fees provisions are set forth in notes 1–3, *supra*.

15. *See Williams Enters., Inc. v. Sherman R. Smoot Co.*, 290 U.S.App. D.C. 411, 416–17, 938 F.2d 230, 236–37 (1991) (subcontractor liable for attorneys' fees provided for in the contract); *Sundown, Inc., supra*, 390 A.2d at 432 (valid contract provision can authorize attorneys' fees); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) (same).

16. The cases cited by Urban for the proposition that if the attorneys' fees provision is ambiguous, the contract exception to the American Rule is inapplicable, involve circumstances where no contract existed, or the contract made no provision for attorneys' fees. *See, e.g., Feick v. Fleener*, 653 F.2d 69, 78–9 (2d Cir.1981) (court refused to apply contract exception because there was "in no sense a contract"); *In re Hallmark Builders, Inc.*, 67 B.R. 63, 65 (Bankr.M.D.Fla.1986) ("review of the relevant contractual provision revealed no specific award of attorneys' fees"); *Equitable Life Assurance Soc'y v. Mangel Stores Corp.*, 691 F.Supp. 987, 990–91 (E.D.La.1988) (no attorneys' fees because lease provided for attorneys' fees "where the tenant fails to pay its rent" and the suit did not involve the tenant's failure to pay rent). Neither of the contracts involved in *Washington Aluminum Co. v. Pittman Constr. Co.*, 383 F.2d 798, 805 (5th Cir.1967) and *Federal Surety Co. v. Basin Constr. Co.*, 91 Mont. 114, 5 P.2d 775, 778 (1931), provided for the recovery of attorneys' fees, thus the court refused to award any. The other cases are equally inapplicable. *Robinson & Wilson, Inc. v. Stone*, 35 Cal.App.3d 396, 110 Cal.Rptr. 675, 687 (1973) ("managerial and administrative services" do not include attorneys' fees); *Alexander v. Fidelity & Casualty Co.*, 232 Miss. 629, 100 So.2d 347, 348 (1958) (attorneys' fees not included in clause referring to "all costs and damages"); *Fausett Builders, Inc. v. Globe Indem. Co.*, 220 Ark. 301, 247 S.W.2d 469, 472 (1952) (same).

is ambiguous, "the ultimate interpretation then becomes a question for the finder of fact"); *Fabrica, supra,* 684 F.2d at 780 ("when a contract term is reasonably susceptible of more than one interpretation, it is ambiguous and the resolution of its meaning is for the jury"). For all of these reasons, we reject Urban's claim that because there is ambiguity the American Rule must apply.

■ Paragraph 1(g) of the subcontract unambiguously provides that N & N is entitled to recover attorneys' fees when it prevails in litigation against Urban. On the other hand, Articles 28 and 29 of the primary contract, incorporated into the Urban/N & N subcontract, provides that each party is responsible for its own attorneys' fees. *See supra* notes 1–4. N & N contends that as a matter of law, all of these contract provisions, read together, provide for an award of attorneys' fees to it as the prevailing party in this action. Alternatively, N & N contends that although interpretation of the provisions was a legal determination which the trial judge should have resolved in its favor, the jury verdict finding that the parties intended to provide for fee-shifting, should be upheld.

In our view, there is considerable uncertainty on this point because of the apparent conflict between the attorney fee provisions in the two contracts. Therefore, we cannot say the trial court erred in permitting the jury to decide the issue of what the parties intended. At trial, N & N presented uncontradicted testimony that the parties intended, in disputes between Urban and N & N such as this one, that the attorney fee provision of paragraph 1(g) of the Urban/N & N subcontract should apply. The jury, by its verdict, obviously credited that testimony and Urban, while not retreating from its contention that the issue should have been resolved in its favor as a matter of law, does not contend otherwise. Therefore, we find no basis for disturbing the jury's finding that N & N was entitled, under the contract, to receive attorneys' fees. *District of Columbia v. Cassidy,*

465 A.2d 395, 397 (D.C.1983) (jury verdict upheld unless the evidence and reasonable inference therefrom, support conclusion that no jury could have reached such a verdict).

■ Urban also claims that since N & N failed to establish a *prima facie* case regarding the amount and the reasonableness of the attorneys' fees, the trial court erred in submitting that issue to the jury. Specifically, Urban contends that the testimony presented, which only estimated the amount of attorneys' fees incurred, without documentary evidence such as bills and payments in support, is insufficient to establish a *prima facie* case of the amount of fees owed. We do not address this contention because we conclude that the reasonableness of the attorneys' fees is a determination for the trial court to make, not the jury. *Kudon v. f.m.e. Corp.,* 547 A.2d 976, 979 (D.C.1988); *Ginberg v. Tauber,* 678 A.2d 543 (D.C.1996).[17]

In *Kudon,* the lessee of postal meters sued the lessor alleging tortious interference with contractual relations with the United States Postal Service. The trial judge subsequently ruled that the agreements between the parties provided that the lessor was entitled to receive reasonable attorneys' fees incurred in defending against the lessee's claim, and in prosecuting its own counterclaim. Thereafter, the trial court determined the amount of attorneys' fees in a separate hearing. The lessee appealed, contending that because the lessor's claim for attorneys' fees arose out of a private contract provision, it was entitled to have a jury determine the amount of the fee award.

This court, relying on the "at law" and "in equity" distinction for the purposes of the Seventh Amendment jury trial analysis, and fully discussing the American Rule, affirmed the trial court, holding:

[W]e believe that the question of what constitutes a reasonable attorneys' fee, al-

---

**17.** *See also Williams Enters., supra,* 290 U.S.App. D.C. at 416, 938 F.2d at 237 (bench trial: when contract provides for attorneys' fees, "trial judge, in view of his or her experience on the bench and at the bar, may be in a position, without more, to make a determination of reasonableness" of at-

torneys' fees) (citation omitted); *Nolan v. Nolan,* 568 A.2d 479, 490 (D.C.1990) (same); *Central Fidelity Bank v. McLellan,* 563 A.2d 358, 360 (D.C.1989) (default judgment: same); *F.W. Bolgiano & Co. v. Brown,* 333 A.2d 674, 675 (D.C. 1975) (summary judgment: same).

though not entirely incapable of jury resolution, is one better left for the court. *Kudon, supra,* 547 A.2d at 979; *Ginberg, supra,* 678 A.2d at 547–551. Thus, where a contract includes an attorneys' fees provision, the jury determines, where there is ambiguity in that provision, whether the parties intended that fees be awarded under the circumstance; the judge then determines the amount of the fee to be awarded. *Accord, Redshaw, supra,* 686 F.Supp. at 677. Therefore, although the trial judge correctly permitted the jury to determine whether there was an enforceable attorneys' fees award provision in this case, the trial judge erred in presenting the issue of the reasonableness of the attorneys' fees to the jury.

Accordingly, we remand the case to permit an explicit determination by the trial judge of the reasonableness of the fees to be awarded. We are mindful that, in ruling on the post-trial motion seeking to set aside the jury's attorneys' fees award, the trial court did not disturb the verdict reached by the jury. In doing so, the trial judge may have concluded that it would have arrived at the same result as the jury, or the trial judge may simply have been ruling that there was no basis for setting aside the jury's determination.[18] We have often held that when the court decides the reasonableness of an attorney fee award, itemized bills and testimony are not absolutely essential to support its finding. *Central Fidelity Bank, supra,* 563 A.2d at 360 and n. 8; *Nolan, supra,* 568 A.2d at 490. On remand, therefore, the trial court is free to enter judgment as to the proper amount of attorneys' fees based on the record presented to the jury if the court is satisfied there is a sufficient basis for doing so.

### C. Cost to install the sixty-eight additional pieces.

 Urban maintains that N & N failed to make out a *prima facie* claim of costs incurred by it in installing the sixty-eight additional precast panels. Specifically, Urban claimed that N & N failed to submit: (1) a bid/estimate of original costs per piece; (2) actual cost per piece; (3) estimated labor costs; (4) actual labor costs; (5) estimated equipment costs; (6) actual equipment costs; (7) estimated overhead and profit; and (8) actual overhead and profit. The court must accept the trial judge's factual findings if they are not "clearly erroneous." Super. Ct. Civ. R. 52(a); *Cahn v. Antioch Univ.,* 482 A.2d 120, 128 (D.C.1984) (issue is not whether we would have made the same findings as the trial court but "whether on the entire evidence we are left with ... [a] firm conviction that a mistake has been committed") (citation omitted); *Julian W. Curtis Co. v. District–Realty Title Ins. Corp.,* 267 A.2d 830, 833 (D.C.1970) (fact findings not reviewable on appeal unless plainly wrong or without evidence).

Following testimony at the *"ex parte"* hearing, the trial court found:

1. The subcontract had provided for N & N to install 297 pieces of precast concrete (enough to cover the building) for $84,600 (which could be considered $284.85 per piece). The precast pieces actually used were smaller than anticipated so it took 365 pieces to cover the building.

2. N & N estimated that, without delays or disruptions, 8 pieces of precast concrete (regardless of size) could be installed in an average work day using five to six men at a cost of $47 per man hour. By this formula, each piece of precast concrete costs $258.50 to install.

3. The court finds that N & N is entitled to recover from Urban $258.50 per piece for the 68 additional pieces for a total of $17,578.

The trial court's findings and conclusions are supported by substantial evidence on the record, and set forth adequate factual and legal grounds for the award made. We held earli-

---

**18.** At the *"ex parte"* damages evidentiary hearing on the issue resolved by the grant of summary judgment, N & N offered legal bills and a cost accounting summary to support its claim for attorneys' fees and expenses. These documents indicate the total fees and costs incurred by N & N through December 1, 1993 was $25,438.99. It is not improbable that the trial judge, who presided over both the hearing and the trial, considering the information presented at the *"ex parte"* hearing, and the testimony presented by N & N at trial, was satisfied that the amount of attorneys' fees awarded by the jury was the proper amount.

er that summary judgment was proper, and since Urban has not established the level of proof it contends is required, we will not disturb the trial court's findings. *See Marshall v. District of Columbia,* 391 A.2d 1374, 1379–80 (D.C.1978).

## D. Interest Award

■ Finally, Urban challenges the jury award of interest on N & N's delay and disruption claim on the basis that the verdict ignores the "pay if paid" clause of the Urban/N & N subcontract.[19] Urban relies on *Gilbane Bldg. Co. v. Brisk Waterproofing Co., Inc.,* 86 Md.App. 21, 585 A.2d 248, 250 (1991) and *DEC Elec., Inc. v. Raphael Constr. Corp.,* 558 So.2d 427, 429 (Fla.1990) to challenge the trial court's calculation of interest from December 22, 1991, on the grounds that: (1) it was relieved of its obligation to pay N & N for work performed because it never received payments from Blake and, thus, the condition precedent was not satisfied; and (2) even if the settlement was considered payment from Blake, at the earliest, interest would not accrue until forty-five days after January 27, 1993 (the date Urban claims it entered into the Urban/Blake settlement).

We reject both of these contentions and Urban's reliance on *Gilbane* and *DEC Elec.* because the condition precedent was satisfied on November 6, 1991, when Urban settled its claims against Blake.[20] Alternatively, even if

the walk-away settlement did not satisfy the condition precedent, Urban still breached the contract by failing to protect N & N's interest in the settlement agreement. At the time of the settlement, Urban knew of N & N's outstanding claim for additional compensation and of the "pay if paid" condition. Nonetheless, Urban agreed to a settlement that failed to secure payments for N & N, thus breaching the implied condition which imposed the duty, on the parties, not to frustrate the fulfillment of the condition precedent. Urban cannot benefit from its willful hindrance of the condition precedent, and is therefore, liable for its breach of the Urban/N & N subcontract. *Blake Constr. Co. v. C.J. Coakley Co.,* 431 A.2d 569, 576 (D.C. 1981) ("implicit duties between contracting parties, particularly the duty not to prevent performance by the other party"); *Funger v. Mayor & Council of Town of Somerset,* 249 Md. 311, 239 A.2d 748 (1968) (same); 3 A.L. CORBIN, CORBIN ON CONTRACTS, §§ 570, 571, 770 (1960 & 1994 Supp.).[21]

## IV.

For the reasons stated, we affirm the judgment of the trial court in all respects except for its award of attorneys' fees on the delays and disruption claim. With respect to that portion of the judgment, the case is remanded for the reasons stated in the final paragraph of Part III. B., *supra.*

*So Ordered.*

---

19. The pertinent contract language provides:
 1(a [P]ayments will be made to the Subcontractor promptly as they are received. Receipt of payment by Contractor shall be a condition precedent to payment being owed to Subcontractor.
 1(e) Invoices for work performed by Subcontractor will be paid within five (5) days after receipt of the corresponding payment from General Contractor. Contractor shall, however, have the right to withhold funds necessary to repair or complete defective work, [incorporates Articles 28 & 29][.] Late payments shall bear an interest at the rate of ten percent (10%) per annum [incorporates Articles 28 & 29] not beyond normal retention.

20. An affidavit of Stanley Prill, president of Blake Construction Company, reveals that the Urban/Blake settlement occurred on November 6, 1991. In pertinent part the affidavit reads:
 4. On or about November 6, 1991, I met with Fred Hayes, the president of Urban Masonry

Corporation, ("Urban"), to discuss various claims and disputes raised by both Blake and Urban with respect to the Portals Office Building project, ("project").
 5. At that time, we agreed on behalf of our respective companies that all claims and disputes between Blake and Urban relating to the Portals project would be null and void.
 6. By letter dated November 12, 1991 to Mr. Hayes, I confirmed the agreements that we had reached. . . .

21. CORBIN § 770 in relevant part provides:

 **Implied Duty Not to Prevent or Hinder**
 [A] contractor whose promissory duty is subject to a condition precedent eliminates that condition if he unjustly prevents its fulfillment. This is true even though he has made no express promise that he will not prevent such fulfillment ... the promisor's prevention of the fulfillment of the condition is itself regarded as a breach of contract. . . .

WAGNER, Chief Judge, concurring:

I join in the opinion with the exception of Part III. B., with which I concur in part. Part III. B. of the opinion addresses Urban's argument for reversal on the ground that "N & N failed to make a *prima facie* case as to the quantum of attorney's fees which should have precluded submission of the matter to the jury." Specifically, Urban claimed that the evidence was insufficient to show the amount of fees incurred or their reasonableness. *See Auxier v. Kraisel,* 466 A.2d 416, 420 (D.C.1983); *Eureka Inv. Corp. N.V. v. Chicago Title Ins. Co.,* 240 U.S.App.D.C. 88, 98, 743 F.2d 932, 942 (1984). Reversing on the ground that the question of the amount of attorney's fees to be awarded was for the court and not a jury,[1] this court does not reach these issues. Since Urban never challenged the jury triability of the issue in the trial court or on appeal, I would not consider the question on appeal and reverse on that basis. *See George Washington Univ. v. Waas,* 648 A.2d 178, 182 n. 6 (D.C.1994) (failure to raise issue at trial and in brief on appeal normally precludes its consideration); *District of Columbia v. Bethel,* 567 A.2d 1331, 1334 (D.C.1990). However, I agree with the opinion of the court that, at least in cases where the prevailing party in a breach of contract action seeks an award of attorney's fees pursuant to the contract sued upon, the determination of the amount of fees is for the court and not the jury. *Kudon, supra* note 1, 547 A.2d at 979; *see also Ginberg v. Tauber,* 678 A.2d 543, 552–553 (D.C. April 25, 1996) (Wagner, C.J., dissenting). Therefore, I agree that if the case is remanded, the issue should be decided by the court.

---

**1.** *See Kudon v. f.m.e. Corp.,* 547 A.2d 976 (D.C. 1988).